# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs November 4, 2003

## STATE OF TENNESSEE v. ESLIE L. MORGAN

### Direct Appeal from the Criminal Court for Shelby County
### No. 99-11102      W. Otis Higgs, Jr., Judge

---

### No. W2003-00172-CCA-R3-CD  - Filed November 18, 2003

---

A Shelby County jury convicted the defendant, Eslie L. Morgan, of attempted voluntary manslaughter. The trial court sentenced him to eight years in confinement as a Range II multiple offender. On appeal, the defendant contends: (1) the evidence is insufficient to support his conviction; and (2) the trial court erred in permitting the prosecutor to ask the victim an improper question during redirect examination. Upon review of the record and the applicable law, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Eslie L. Morgan.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and E. Greg Gilluly, Jr., and Michelle Kimbril-Parks, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted of attempted voluntary manslaughter for the shooting of Kendrick Holmes during an altercation on March 14, 1999, outside of Club Mirage in Shelby County, Tennessee. Holmes testified he, Alex Hugle, Clarence "Trey" Johnson, and Christopher Guinn arrived at the club at approximately 12:00 a.m. Prior to entering the club, security guards conducted pat-down searches on each of the men.

While inside the club, Guinn informed Holmes that he had bumped into the defendant. Holmes testified Guinn told him that he apologized to the defendant, but the defendant refused to accept his apology. The defendant then approached Holmes and Guinn. Holmes stated Guinn again apologized to the defendant, but the defendant "wouldn't let it go." When the defendant began to argue with Guinn, Holmes intervened and requested the defendant to "let it go." Holmes stated the defendant then "cussed [him] out."

Holmes testified a security guard intervened and instructed the parties to leave the club. Furthermore, the club was closing for the night. Holmes stated the defendant exited the club first, and he, Hugle, Johnson, and Guinn left through a different exit and were the last people to exit the club.

Holmes observed Guinn walk to a parking lot on one side of the building. Holmes further stated he observed the defendant and a woman return from a parking lot across the street from the club and approach Guinn. Holmes testified that although he did not observe the defendant with a gun at that time, he believed that upon exiting the club, the defendant returned to his vehicle and retrieved a weapon.

Holmes testified the defendant and Guinn began arguing, while Hugle exited the club and approached them. Holmes stated that when the argument "picked up," he approached the men and heard Guinn say, "I said I apologize." Holmes then separated Guinn and Hugle from the defendant and instructed Hugle to retrieve his vehicle. Holmes stated that when they attempted to walk away from the defendant, the defendant followed them. Holmes further stated he never threatened to harm the defendant.

Holmes testified he observed an empty bottle lying on the ground and further observed the defendant "flinching up under his jacket, like he's fixing to pull something out." Holmes stated that once the defendant reached inside of his jacket, he picked up the bottle intending to protect himself and threw it at the defendant. Holmes further stated that at the same moment, the defendant produced a black nine millimeter handgun and fired one shot into the air. Meanwhile, the beer bottle hit the defendant in the face and shattered. The defendant took one step backwards, brushed the glass from his face, and pointed the gun at Holmes.

Holmes stated he and the defendant struggled for the gun, and the defendant shot him in the side of his stomach. While they continued to struggle for the gun, the defendant shot Holmes a second time causing one of his eardrums to burst. Holmes testified that upon being shot a second time, he stopped struggling with the defendant. Holmes stated the defendant then grabbed his shirt with his other hand, pointed the gun at the middle of his chest, and shot him a third time.

Holmes testified he then pushed the defendant away from him and fell to the ground. Holmes stated the defendant approached him, and, believing the defendant intended to shoot him in his head, Holmes acted as if he were dead. He further stated that upon opening his eyes, he observed the defendant standing over him, pointing the gun at his head, and looking around as if he were determining a means of escape. The defendant then ran behind the club.

Holmes testified he remained hospitalized for nine days following the shooting and sustained numerous internal injuries, which required surgery. Holmes spoke to a police officer the following day and identified the defendant as the shooter.

Freddie Davis testified she went to Club Mirage with her friend, Samantha Jameson, who was then dating Holmes. After leaving the club, she heard gunshots and saw Holmes lying on the

ground. Davis testified that as she and Jameson were walking toward the area, she observed the defendant running and subsequently driving away from the scene.

Alex Hugle testified he, Guinn, Holmes, and Johnson went to Club Mirage. While he and Holmes were speaking to one another inside the club, Guinn approached Holmes and informed him of an altercation with the defendant. The defendant then approached Guinn and argued with him while Hugle spoke to one of the two women who accompanied the defendant. Hugle testified that although he was unaware of the subject matter of the argument, he heard Guinn apologize to the defendant. He stated a security guard then intervened and ordered the parties to leave the club. Approximately ten minutes later, the club closed for the night, and Hugle, Guinn, Holmes, and Johnson were the last group of patrons to exit the club.

Hugle stated that as he and Guinn were walking toward their vehicle, Guinn informed him that the defendant was returning. Hugle further stated the defendant and a woman approached them from behind, and the defendant began speaking to Guinn. Hugle stated that as he and the woman were attempting to "break it up," Holmes instructed Guinn and Hugle to go to their vehicle. Hugle testified that as he was walking toward their vehicle, he heard a gunshot and a "crash," which occurred simultaneously. He stated that upon turning around, he observed the defendant and Holmes "tussling," heard three additional gunshots, and observed Holmes fall to the ground. Hugle testified that when Holmes fell, the defendant stepped toward Holmes, looked around the area, and ran from the scene.

Christopher Guinn testified that while he was inside of the club, he accidentally bumped into the defendant and apologized. Guinn stated the defendant began "jabbing off," and a woman who accompanied the defendant told Guinn to ignore the intoxicated defendant. Guinn then walked to the other side of the club, and the defendant followed him. Guinn stated the defendant was upset and began arguing with him. When Holmes intervened, a security guard ordered the defendant to leave the club.

Guinn testified that upon exiting the club, he observed the defendant and a woman standing on a sidewalk near a road located in front of the club. Guinn stated Holmes instructed him to walk toward their vehicle and to ignore the defendant. The defendant then approached Guinn from behind and began arguing with him. Guinn testified the defendant's hand was inside of his coat, and he believed the defendant possessed a gun. The defendant followed the men as they attempted to walk away from him. Guinn stated Holmes told the defendant that they did not want to fight him; however, the defendant continued to follow them and "had his hand close" as if he were holding a gun. Guinn further stated he and the other men did not possess any firearms.

Guinn testified that as the defendant was producing a gun, Holmes picked up a bottle and struck the defendant with it. Guinn stated the defendant "shook off" the glass; the defendant and Holmes struggled for the gun; and the defendant shot Holmes. Guinn further stated that after Holmes ceased struggling, the defendant pulled Holmes closer to him, shot him again, and pushed him on the ground. The defendant stood over Holmes and then fled. The defendant was subsequently arrested.

The defendant presented the testimony of Jeffrey Martin, who stated he was the assistant manager of Club Mirage as well as a friend of the defendant. Martin testified that while exiting the club and walking to his vehicle between 1:30 a.m. and 3:00 a.m., he observed the defendant and a woman standing approximately thirty feet away and speaking to three men. Martin stated he further observed a man standing approximately eight feet away from the defendant and speaking to a woman. Martin testified the man walked away from the woman, picked up a bottle, and struck the defendant "from the blind side" shattering the bottle. The man then charged the defendant, and they began to wrestle. Martin stated he heard one gunshot, observed the defendant and the man fall to the ground, and heard two additional gunshots.

Martin testified he did not see the defendant produce a gun and did not know who had been shot until the defendant arose from the ground. The defendant then ran from the scene. Martin stated he did not remain at the scene and wait for the police to arrive because he had "some special business [he] was taking care of."

The defendant was charged with attempted second degree murder, and the jury convicted him of attempted voluntary manslaughter as a lesser offense. The trial court sentenced the defendant to eight years incarceration as a Range II multiple offender.

## I. SUFFICIENCY

The defendant contends the evidence is insufficient to support his conviction for attempted voluntary manslaughter. We disagree.

### A. Standard of Review

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

### B. Analysis

A person commits criminal attempt when he or she acts with the kind of culpability otherwise required for the offense and

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

-4-

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a). One commits voluntary manslaughter who intentionally or knowingly kills another "in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." *Id.* § 39-13-211(a).

When viewed in a light most favorable to the state, the proof presented at trial established that while inside the club, Guinn accidentally bumped into the defendant and immediately apologized. However, despite his apology, the insistence of both Guinn and Holmes that they did not want to fight, and their numerous attempts to walk away from the defendant, the defendant continued to follow them and argue with Guinn. Holmes and Guinn testified that when they saw the defendant outside of the club, he appeared to have a gun in his coat pocket.

Holmes testified that as the defendant reached into his jacket, Holmes picked up an empty beer bottle and struck the defendant with it. The defendant fired one shot into the air. The proof further established that as Holmes and the defendant struggled for the gun, the defendant shot Holmes twice. The defendant then shot Holmes again after Holmes stopped struggling with him. We conclude the evidence presented at trial is sufficient to support the defendant's conviction for attempted voluntary manslaughter.

We further conclude the proof presented at trial justified the jury's rejection of the defendant's claim of self-defense. Whether a defendant acted in self-defense is a question for the jury. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Although Holmes struck the defendant with a bottle and struggled with him, the defendant provoked Holmes' use of force by continuing to pursue the victim and reaching for a weapon. *See* State v. Inlow, 52 S.W.3d 101, 109 (Tenn. Crim. App. 2000) (holding self-defense is not an available defense where the defendant provokes the initial use of force). Further, the third time the defendant shot Holmes was after the struggle and Holmes was defenseless. Accordingly, this issue is without merit.

## II. REDIRECT EXAMINATION

The defendant maintains the trial court erred in permitting the state to ask an improper question during its redirect examination of the victim. We disagree.

### A. Trial Proceedings

The defendant was tried jointly with Deborah Hart, who was indicted as an accessory after the fact.[1] During cross-examination, co-defendant Hart's attorney elicited testimony from Holmes that he never informed the police that upon exiting the club, he observed the defendant walking

---

[1]The jury acquitted Ms. Hart of this offense.

across the street toward the club; that he never gave a formal statement to the police; and that he did not speak to the police when they arrived at the scene of the shooting.

During redirect examination, the prosecutor asked Holmes the following question:

Q: Mr. Holmes, why are you here today?

Defense counsel objected based upon relevance, and the trial court overruled the objection. The following colloquy then occurred:

Q: Why are you here today, Mr. Holmes?

A: Really wanted–So I can move on with my life, you know, look past this. And just, you know, just get this out. Because ever since then, it's, like, been holding me down. I just–I don't know. I really don't know why the argument started, or nothing. And I just really want to know why, you know.

## B. Analysis

The scope of redirect examination is within the trial court's discretion and will not be reversed absent an abuse of that discretion. State v. Barnard, 899 S.W.2d 617, 624 (Tenn. Crim. App. 1994). Based upon Holmes' testimony elicited on cross-examination, we are unable to conclude the trial court abused its discretion in permitting the testimony on redirect examination. Furthermore, we conclude the defendant was not prejudiced by this testimony.

## CONCLUSION

Based upon our review of the record and applicable law, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE